UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00759-H

BEACON ENTERPRISE SOLUTIONS GROUP, INC.                                                   PLAINTIFF

V.

MDT LABOR, LLC                                                                                         DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Beacon Enterprise Solutions Group, Inc. ("Beacon"), entered into an Asset Purchase Agreement (the "Agreement") whereby Beacon conveyed substantially all of its operating assets to Defendant, MDT Labor ("MDT"). Subsequent to the transaction, a dispute arose regarding ownership of certain value added tax ("VAT") refunds. The parties have filed various motions, the most significant of which is Beacon's motion for partial summary judgment on its breach of contract claim against MDT.[1] For the reasons that follow, the Court sustains the motion.[2]

---

[1] The current Court notes this is more like a motion for summary judgment for specific performance related to MDT's contractual duty to forward Beacon's VAT refunds. Beacon's proposed order asks for the September and October 2012 VAT refunds amount plus any other VAT refunds MDT may have received to date. This is not a monetary obligation owed by MDT to Beacon but rather a ministerial duty that MDT is contractually obligated to perform. Beacon has not alleged any other damage for which MDT would be liable resulting from this breach of contract claim. At this current impasse, the Court declines to rule on what relief, be it damages or specific performance, that may be appropriate now or in the future.

[2] A decision rendered on this motion necessarily implicates two of MDT's pending motions. First, MDT filed a motion to stay Beacon's motion for partial summary judgment arguing that summary judgment on this claim is premature given the need for discovery. This is a garden variety breach of contract claim. Further discovery on this particular motion is unnecessary since the Court finds the contract to be unambiguous and the provision at issue to be unequivocally straightforward. Moreover, MDT's proposed counterclaims have no bearing on this claim and are wholly independent of whether it has a contractual obligation to forward the VAT refunds to Beacon absent an entitlement to set-off.

Second, the Court will address MDT's motion to dismiss Beacon's conversion claim and claim for punitive damages in Section III.

**I.**

In late August 2012, Beacon received an offer from MDT to purchase Beacon's operating assets. Negotiations ensued, culminating in the September 5, 2012 Agreement. In the Agreement, MDT acquired certain assets of Beacon including customer contracts, accounts receivable, work in progress and control of all of Beacon's existing bank accounts. The Agreement expressly excluded certain "VAT refunds" from the assets conveyed. The Agreement provided that the VAT refunds would be paid into bank accounts that came under MDT's control as a result of the transaction. Pursuant to Paragraph 3 of the Agreement, MDT was to forward these funds to Beacon within 24 hours of receipt.

In mid-September 2012, the CEO for Beacon, Mr. Widener, learned that MDT had received VAT refund money from the Belgian VAT authority in the approximate amount of €99,000. In October 2012, MDT received an additional VAT refund totaling approximately €6,900. Beacon anticipates additional VAT refunds for work done prior to September 5, 2012, the Agreement's closing date.

MDT has not forwarded the VAT refunds, claiming that under the Agreement, it is entitled to off set the refunds against fraudulent and uncollectible accounts receivables. Beacon has made numerous, unsuccessful written demands for the VAT refunds. On November 14, 2012, Beacon filed this complaint asserting claims for breach of contract, conversion and declaratory judgment. Beacon asks for compensatory damages, injunctive relief, punitive damages, declaratory relief, prejudgment and post judgment interest and attorneys' fees. Additionally, Beacon moved for a preliminary injunction requiring MDT to pay Beacon all VAT refunds received to date.

With respect to Beacon's motion for preliminary injunction, following a telephonic conference with the parties, the Court ordered MDT "to deposit the VAT refunds and any further VAT refunds received by MDT to the United States Court for the Western District of Kentucky." Order (December 6, 2012), ECF No. 15. MDT did so on December 11, 2012, in the amount of $139,486.48. The Court held a preliminary injunction hearing on January 9, 2013. In a decision also issued today, the Court has denied Beacon's motion for a preliminary injunction.

In this motion, Beacon claims it is entitled to the VAT refunds received by MDT in September and October 2012, as well as any other VAT refunds that have been received by Defendant. Additionally, Beacon argues that under Paragraph 10(a) of the Agreement, MDT is obligated to reimburse Beacon for its reasonable attorneys' fees and related expenses. This is an unusual circumstance, as Beacon seeks a partial summary judgment prior to MDT having answered the complaint or filed its expected counterclaims. Nevertheless, under the circumstances, it seems appropriate for the Court to address these issues.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cady v. Arenac Cnty.*, 574 F.3d 334, 339 (6th Cir. 2009). The primary issue is "whether the evidence presents a sufficient disagreement to require submission to a jury of whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**II.**

Consistent with Paragraph 12(g) of the parties' Agreement, the Court will apply Pennsylvania law to the substantive legal issues arising from the provisions of the Agreement. Under Pennsylvania law, a plaintiff may maintain a breach of contract claim if it establishes: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002), *appeal denied*, 856 A.2d 834 (2004). As to the means by which a court should construe a contract, the Pennsylvania Supreme Court has said:

> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not reviewed in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001)(internal citations and quotation marks omitted).

Beacon argues that it is entitled to the VAT refunds received by MDT in September and October 2012 as a matter of law, as well as any other VAT refunds that have been received by MDT. Here, the parties do not dispute the existence of the Agreement. For the reasons that follow, the Court concludes that the relevant provisions of the Agreement apply unambiguously in these circumstances.

A.

The Agreement unambiguously excludes VAT refunds, earned by Beacon prior to the asset purchase transaction, from the assets conveyed to MDT.[3] It directs MDT to forward any VAT refunds paid into former Beacon bank accounts now under MDT's control as a result of the transaction. At no time did MDT gain ownership of the VAT refunds; rather, they had an obligation, akin to a bailor, to turn over such funds if and when any were deposited into MDT's newly-acquired bank accounts.

There is no dispute that VAT refunds were deposited into MDT's bank accounts in September and October of 2012. There is also no dispute that MDT failed to forward the VAT refunds to Beacon within 24 hours, as required under Paragraph 3 of the Agreement. As such, MDT has breached the Agreement, and Beacon is entitled to the September and October 2012 VAT refunds as a matter of law.

B.

Nevertheless, MDT argues it is entitled to retain the VAT refunds pursuant to a right to set-off against uncollectible accounts receivable that MDT acquired from Beacon.[4] The right to set-off applies to any of Beacon's indemnification obligations under Paragraph 8 of the Agreement, including "[a]ny material misrepresentation . . . in connection with any of the representations . . . given or made by [Beacon] in this Agreement or any Exhibit to this Agreement."

---

[3] Paragraph 3 provides in full: "Excluded Assets. All assets not included in Paragraph 2 of this Agreement . [Beacon] shall retain all rights to any value added tax ("VAT") refunds related to services provided by [Beacon] for all services dates prior to Closing. Should those VAT funds be remitted to [MDT], [MDT] shall immediately forward said funds to [Beacon] within 24 hours of receipt."

[4] The set-off provision found in Paragraph 9 provides in part, "If from time to time and at any time [MDT] shall be entitled to be paid any amount under the provisions of Paragraph 8, [MDT] shall be entitled, if it so elects, in its sole discretion, to set-off such amount against any other obligation owed by [MDT] to [Beacon]."

MDT says that in early October 2012, it learned of two sets of accounts receivable that were either uncollectible or entirely non-existent. MDT maintains that Beacon purposely inflated the amount of the accounts receivable in Schedule 3 to the Agreement to induce MDT to enter into the Agreement. As a result, MDT has had to write off the accounts receivable in question, thus lowering its borrowing base of funds needed to operate its business. MDT contends that pursuant to Paragraph 9 of the Agreement, it exercised its right to set-off Beacon's indemnification obligations for misrepresenting the accounts receivable in the amount of $166,669.20 against VAT refunds MDT received on behalf of Beacon. In sum, MDT argues that in setting off the 2012 September and October VAT refunds, it was not in violation of any duty imposed under the terms of the Agreement.

MDT cites a Pennsylvania case for the proposition that a purchaser under an asset purchase agreement may invoke a contractual set-off provision despite the fact that the purchaser does not first obtain a judgment on its claim against the seller. *See Darius Int'l, Inc. v. Young*, 2008 WL 1870945 (E.D. Pa. April 23, 2008). The Court has taken a close look at this case and the parties' respective contracts underlying the Pennsylvania district court's decision. The results in any contract case necessarily turn on the precise language itself.

In the *Darius* case, the Consulting Agreement provided, "The compensation payable to the Consultants hereunder shall be subject to reduction as provided in" two indemnification provisions. The *Darius* provision is fundamentally different than the Agreement's set-off provision. A close reading of the Agreement's set-off provision indicates that it is operative only once MDT establishes an "entitlement" to payment under Paragraph 8, the indemnity provision. Only then may MDT, in its discretion, exercise a set-off. The Agreement does not contain a specific definition of an "entitlement". However, a reasonable reading suggests that an "entitlement" must be a right

established legally or contractually. Therefore, the Court concludes that such language requires that MDT possess or assert more than a mere claim to indemnification. At the present moment, MDT presents only a claim to indemnification.[5]

Had the Agreement contained language similar to that in the *Darius* case, whereby the compensation was subject to the indemnification provisions, MDT could have contractually exercised a proper set-off. However, unlike the provision in *Darius*, the Agreement here does not condition payment of the VAT refunds on fulfillment of the indemnity obligations. Moreover, the *Darius* provision appears to grant the discretion of an operable set-off entirely with the party. As earlier discussed, only after an entitlement to be paid under Paragraph 8 is established may MDT choose to exercise a set-off.

Lastly, MDT argues that the set-off provision was intentionally included in the Agreement to operate in situations like the present. The precise language suggests otherwise. Its lack of ambiguity bars the Court from delving into the parties' intent with respect to the interplay between the VAT provision and the set-off provision. The Court concludes that MDT has breached the Agreement by failing to forward the September and October 2012 VAT refunds to Beacon within the contractually proscribed 24 hours.

### III.

Beacon's Complaint, in addition to its breach of contract claim, contains a conversion claim arising out of MDT's retention of the VAT refunds. In connection with its conversion claim, it seeks

---

[5] Arguably, MDT did not even have a claim to indemnification when it received the VAT refunds in September 2012 since it first learned of the allegedly fraudulent account receivables in October. When MDT received the October 2012 VAT refunds, it had no entitlement pursuant to Paragraph 9 as it hadn't at that point won, or even formally filed a claim with the Court.

punitive damages. MDT has moved to dismiss the conversion claim and claim for punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6).

In Kentucky, "a plaintiff cannot maintain a conversion claim in addition to a breach of contract claim unless [it] can establish the existence of an independent legal duty separate and apart from the contractual obligation." *First Const., LLC v. Gravelroad Entm't, LLC*, 2008 WL 2038878, at *5 (E.D. Ky. May 12, 2008). Specifically, a conversion claim cannot be brought where "the property right alleged to have been converted arises entirely from the contractual rights." *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F.Supp. 2d 785, 801 (W.D. Ky. 2005). Here, Beacon alleges that MDT was contractually obligated to remit VAT refunds that came into its possession following the asset purchase transaction. Beacon's conversion claim alleges the actions of MDT with respect to the VAT refunds constitute unlawful conversion of Beacon's property. Thus, the property right alleged to have been converted clearly originates entirely from rights created under the contract. The terms of the Agreement dictate whether Beacon is entitled to the VAT refunds and whether MDT failed to perform its contractual duty. Accordingly, Beacon cannot maintain a claim for conversion and MDT's motion to dismiss is granted.

Under Kentucky law, punitive damages are not available for a breach of contract claim. KRS § 411.184(4); *Fed. Kemper Ins. Co. v. Hornback*, 711 S.W. 2d 844 (Ky. 1986). Nonetheless, a plaintiff may still recover punitive damages if it "can prove that an independent tort was committed in connection with the breach of contract." *Gravelroad Entm't, LLC*, 2008 WL 2038878, at *5. Having found Beacon's conversion claim fails as a matter of law, only two breach of contract claims and a declaratory judgment claim remain. As such, Beacon has failed to state a cause of action that warrants the imposition of punitive damages.

**IV.**

Beacon is entitled to partial summary judgment as a matter of law on its breach of contract claim regarding nonpayment of the VAT refunds. As such, Beacon is entitled to VAT refunds received by MDT in September and October 2012[6], plus any other VAT refunds received by MDT to date. Additionally, the Agreement provides that MDT reimburse Beacon its reasonable attorneys' fees and expenses in circumstances such as these.[7] In Beacon's motion, it indicated it will perform the proper accounting and move for a specific amount.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Beacon's motion for partial summary judgment on its contract claim is SUSTAINED.

IT IS FURTHER ORDERED that Beacon is entitled to and shall recover its reasonable attorneys' fees and expenses in connection with this partial summary judgment action.

IT IS FURTHER ORDERED that MDT's motion to dismiss Beacon's claim for conversion and punitive damages is SUSTAINED and those claims are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that MDT's motion to stay Plaintiff's motion for partial summary judgment is DENIED.

IT IS FURTHER ORDERED that Beacon's motions for extension of time to file a response to MDT's motion to dismiss Beacon's conversion claim and to file a reply to its motion for partial summary judgment on its contract claim are rendered MOOT by this decision.

---

[6] The amount appears to be approximately $139,486.48, the amount MDT deposited to the Court pursuant to Court Order, (December 6, 2012), ECF No. 15.

[7] Paragraph 10(a) of the Agreement provides that MDT "shall reimburse [Beacon] . . . for, any and all claims, losses, liabilities, damages, costs and expenses (including without limitation attorney's costs) arising out of, based upon or incurred in connection with: (a) Any misrepresentation, breach of or default in connection with any of the representations, warranties, covenants or agreements given or made by [MDT] as set forth in this Agreement."

The remaining claims in this case are Beacon's request for declaratory judgment as to future VAT refunds that may be received by MDT, its breach of contract claim regarding MDT's nonpayment of rent and its request for injunctive relief concerning misuse of Beacon's name and various account numbers as delineated in Beacon's Complaint.

cc: Counsel of Record